# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Lisa Flaherty-Ortega, as Personal Representative of the Estate of Abed Michael Naqshabandi, <br><br>  Plaintiff, <br><br> vs. <br><br> Horry County, South Carolina, Horry County Sheriff's Office, CPL. Scott Legg, Lt. CPL. Cory Johnson, Sheriff Phillip Thompson, Conway Emergency Group, LLP, and Jeffrey Misko, MD, <br><br>  Defendants. | C/A No.: 1:21-2866-RMG-SVH <br><br><br><br><br> ORDER |

This matter comes before the court on motion to confirm confidential designation of documents filed by Horry County Sheriff's Office ("HCSO") and Sheriff Phillip Thompson (collectively, "HCSO Defendants"). [ECF No. 34]. HSCO Defendants request an order confirming their prior designation of certain documents as confidential pursuant to the confidentiality order entered by the court in this case on October 6, 2021 ("confidentiality order"). [ECF No. 23]. HCSO Defendants' motion having been fully briefed [*see* ECF

Nos. 38, 40], it is ripe for disposition.[1]

Lisa Flaherty-Ortega ("Plaintiff"), as the personal representative of the estate of Abed Michael Naqshabandi ("Naqshabandi"), filed this suit on April 14, 2020, arising out of Naqshabandi's suicide during his transport to the J. Reuben Long Detention Center ("detention center") as a pretrial detainee.

On September 30, 2021, the parties filed a motion for consent confidentiality order that the court granted on October 6, 2021. [ECF Nos. 17, 23].[2] As relevant here, paragraphs 3, 6, and 8 provide:

> 3.     Documents Which May be Designated Confidential. Any party may designate documents as confidential but only after review of the documents by an attorney who has, in good faith, determined that the documents contain information protected from disclosure by statute, sensitive personal information, trade secrets, or confidential research, development, or commercial information. The certification shall be made concurrently with the disclosure of the documents, using the form attached hereto at Attachment A which shall be executed subject to the standards of Rule 11 of the Federal Rules of Civil Procedure. Information or documents which are available in the public sector may not be designated as confidential . . . .
>
> 6.     Filing of Confidential Materials. In the event a party seeks to file any material that is subject to protection under this Order with the court, that party shall take appropriate action to ensure that the documents receive proper protection from public disclosure including: (1) filing a redacted document with the consent of the party who designated the document as

---

[1] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this case has been assigned to the undersigned for all pretrial proceedings.

[2] Per the terms of confidentiality order, this order superseded the parties' prior consent confidentiality order. [*See* ECF No. 23 at 1 n.1].

confidential; (2) where appropriate (e.g. in relation to discovery and evidentiary motions), submitting the documents solely for in camera review; or (3) where the preceding measures are not adequate, seeking permission to file the document under seal pursuant to the procedural steps set forth in Local Civil Rule 5.03, DSC, or such other rule or procedure as may apply in the relevant jurisdiction. Absent extraordinary circumstances making prior consultation impractical or inappropriate, the party seeking to submit the document to the court shall first consult with counsel for the party who designated the document as confidential to determine if some measure less restrictive than filing the document under seal may serve to provide adequate protection. This duty exists irrespective of the duty to consult on the underlying motion. Nothing in this Order shall be construed as a prior directive to the Clerk of Court to allow any document be filed under seal. The parties understand that documents may be filed under seal only with the permission of the court after proper motion pursuant to Local Civil Rule 5.03 . . . .

8. Challenges to Designation as Confidential. Any CONFIDENTIAL designation is subject to challenge. The following procedures shall apply to any such challenge.

    a. The burden of proving the necessity of a Confidential designation remains with the party asserting confidentiality.[3]

    b. A party who contends that documents designated CONFIDENTIAL are not entitled to confidential treatment shall give written notice to the party who affixed the designation of the specific basis for the challenge. The party who so designated the documents shall have fifteen (15) days from service of the written notice to determine if the

---

[3] The parties agree that HCSO Defendants currently bear the burden of proving the necessity of a confidential designation. *See also, e.g., Brown-Thomas v. Hynie*, C/A No. 1:18-02191-JMC, 2021 WL 1650264, at *2 n.6 (D.S.C. Mar. 24, 2021) ("As the parties stipulated to the Protective Order and Defendants were not required to initially show good cause before the Protective Order was entered, the court finds they bear the burden of doing so now.").

3

> dispute can be resolved without judicial intervention and, if not, to move for an Order confirming the Confidential designation . . . .

[ECF No. 23 ¶¶ 3, 6, 8].[4]

HCSO Defendants have provided to the court the list of documents for which confirmation is sought ("disputed documents"). [ECF No. 34-1]. HCSO Defendants represent they have "produced over 3,000 pages of documents in this matter," and the disputed documents represent "only 43 pages and 17 videos" that can be divided into the following categories: "(1) Photos and videos, which represent the bulk of the Disputed Documents; (2) Detention Center internal policies/procedures; and (3) Detention Center internal reports or portions of reports." [ECF No. 34 at 3].

The court has discretion on the issuance and scope of a protective order, with "good cause" being the key determination. *Brown-Thomas*, 2021 WL 1650264, at *2 (citing *Rech v. Wal-Mart Stores E., L.P.*, C/A No. 8:19-2514-BHH, 2020 WL 3396723, at *2 (D.S.C. June 19, 2020)).

> Good cause "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). In deciding whether good cause exists, the district court must balance the interests involved: the harm to the party seeking the protective order and the importance of disclosure to

---

[4] Additionally, the court may enter a protective order to, *inter alia*, protect "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

4

> the public. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-89 (3d Cir. 1994); *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973); *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). Some factors to consider in making this determination are privacy interests, whether the information is important to public health and safety and whether the party benefiting from the confidentiality of the protective order is a public official. *Pansy*, 23 F.3d at 787–88. This list is not exhaustive and the court must consider the facts and circumstances of each case in making the good cause determination. *Id.* at 789.

*Id.* (citing *Wiggins v. Burge*, 173 F.R.D. 226, 229 (N.D. Ill. 1997)); *see also Rech*, 2020 WL 3396723, at *2 (citing *Wiggins*); *cf. Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Grp., Inc.*, 121 F.R.D. 264, 267 (M.D.N.C. 1988) ("When a party willingly accedes to the entry of a stipulated protective order, the [c]ourt will be hesitant to relieve that party of its obligations, particularly when the other party produced discovery in reliance on their agreement.").

Turning to the first category of disputed documents, the "bulk" of the disputed documents, HCSO Defendants argue these documents are entitled to remain confidential because "the photos and videos at issue contain clear depictions of the interior of the Detention Center itself . . . and the transport van at issue" and are protected from disclosure pursuant to South Carolina's Freedom of Information Act ("FOIA")[5] and the South Carolina's expungement

---

[5] HSCO Defendants cite the relevant provision of FOIA:

5

statute, S.C. Code Ann. § 17-1-40. [ECF No. 34 at 7–8]. HCSO Defendants further argue:

> [T]he surveillance video and photos within the Disputed Documents depict the inside of the Detention Center's secure areas. Specifically, [certain videos] are 27 hours of surveillance footage from Naqshabandi's housing unit at the Detention Center and the response to Naqshabandi being found unresponsive in one of the Detention Center's two sally ports.[6] These videos—all of which contain a watermark stating "Don't distribute"—depict the internal operations of the Detention Center, including activities of the Detention Center officers working in the unit and daily routine of the unit, as well depict the physical structure and components of the Detention Center, which is itself a security device. Similarly, HCSO 175–178 (sally port) and 192–195, 197–98, and 200 (Naqshabandi's cell) are photographs which depict the inside of secure areas within the Detention Center. It should go without saying that HCSO Defendants have the obligation to protect depictions of the secure areas of the Detention Center from the public at large, lest such information be used to defeat the Detention Center's security devices and plans. Even when non-HCSO employees visit the secure areas of the Detention Center, HCSO does not allow photographs or videos to be taken. Separately from the common-sense protection these videos are provided by FOIA, the video may also be protected by South Carolina's expungement statute. When a pre-trial detainee has the charge expunged pursuant to South Carolina's expungement statute, "no evidence of the record pertaining to the charge or

---

Information relating to security plans and devices proposed, adopted, installed, or utilized by a public body, other than amounts expended for adoption, implementation, or installation of these plans and devices, is required to be closed to the public and is not considered to be made open to the public under the provisions of this act.

S.C. Code Ann. § 30-4-20(c).

[6] HCSO Defendants argue that "the vast majority of the video produced by HCSO Defendants is not even relevant to this case, as it largely involves the 24 hours prior to the specific incidents alleged in Plaintiff's current Complaint—but Defendants produced it nonetheless, understanding a Confidentiality Order was in place." [ECF No. 40 at 8 n.6].

6

> associated bench warrants may be retained by any municipal, county, or state agency S.C. Code Ann. § 17-1-40(B)(1). The expungement statute expressly contemplates "[d]etention and correctional facility" records and specifically states regarding such records "[t]he information is not a public document and is exempt from disclosure, except by court order." For this reason as well, it is HCSO's policy that surveillance video from within the Detention Center is not publicly available as such video depicts numerous inmates within that particular housing unit. While Plaintiff may not be concerned with a non-party's privacy interest in preventing their depiction of being detained on a subsequently expunged charge from being publicly available, HCSO is bound by statute to prevent the dissemination of that information.
>
> Second, and for the same reason, video HCSO 173 (duplicate at SLED 118) and photographs HCSO 179-186 depict the inside of the transport van at issue, which is also a secure area. In particular, HCSO Defendants are especially protective regarding information about the security devices and plans related to the transport of inmates as the transport process represents the most risk for inmate escapes, given that multiple inmates may be transported outside the secure perimeter of the Detention Center by only 1 or 2 officers. Just as the videos and photos of the inside of the secure areas of the Detention Center are not publicly available for the common-sense protection of the integrity of the security devices depicted within the Detention Center, so to is similar information regarding the secure areas of the transport vehicles used by HCSO officers . . . .

[ECF No. 40 at 7–8].

Although Plaintiff argues that "the limited video surveillance from the decedent's unit . . . has no relation to 'security plans and devices'" and "photographs and video of the Plaintiff's decedent and the Horry County transport van that was transporting him to and from the hospital are not confidential" [ECF No. 38 at 6–7], the undersigned finds that HCSO

7

Defendants have shown good cause to maintain the confidentiality designation of this category of disputed documents at this time. HCSO Defendants have sufficiently articulated safety concerns and statutory protections connected to this category of documents. *See, e.g., Dang by & through Dang v. Eslinger*, C/A No. 6:14-37-ORL-31TBS, 2015 WL 13655675, at *4 (M.D. Fla. Jan. 20, 2015) ("The details of how a jail's video surveillance system operates is plainly information that is best kept confidential."); *Gayle v. Meade*, C/A No. 20-21553, 2020 WL 4047334, at *4 (S.D. Fla. July 17, 2020) ("All attorneys shall keep confidential any videos or photographs of any of the detention centers and shall not be used for any purpose other than this litigation and shall not be provided to any third-party or inmate absent leave of the Court.").

Plaintiff also argues she would be "unable to meet the burden set forth in *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000), were she to seek to seal these photographs and video clips, nor would she be justified in asking that the trial be closed to the public based upon the publication of these images and video to the jury in open Court." [ECF No. 38 at 7].[7]

---

[7] In *Ashcroft*, the Fourth Circuit held that before a court may grant a motion to seal a document, the court must ""(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives." 218 F.3d 288 at 302.

8

However, as contemplated by the parties' confidentiality order, it is incumbent upon the parties to negotiate the production of materials designated confidential and avoid filing documents under seal where possible. [*See* ECF No. 23 ¶ 6]. As argued by HCSO Defendants, most of the video that has been produced is not relevant, and the parties have an opportunity in culling the irrelevant materials to produce the relevant photographs and videos in such a way that information is not revealed as to the detention center's security plans or devices, or as to other inmates, negating the need for a motion to seal or a closed court. *See also, e.g., Dang*, 2015 WL 13655675, at *4 ("Plaintiff acknowledges the Sheriff's concern for inmate privacy and has offered to conceal the faces of inmates caught on camera. This strikes the Court as a sensible resolution of this issue and one that also makes sense to protect jail personnel who do not consent to have their faces shown in photographs and videos.").

Turning to the second category of disputed documents, HCSO Defendants argue as follows:

> The Detention Center internal policies/procedures at issue (HCSO 266-277) directly address the security plans, practices, and procedures used to supervise, secure, and transport Detention Center inmates. So too does the Use of Force Report at issue (HCSO 285-289), as it provides information on how Detention Center officers address and respond to an inmate's use of force.

9

[ECF No. 34 at 7].[8] HCSO Defendants argues these documents are also protected by South Carolina's FOIA and are not publicly available. *Id.* A review of the list of designated documents indicate HCSO Defendants seek the following documents to remain designated as confidential in this category: Policy 208.0 Supervision New Admissions, Policy 700.0 Supervision Rounds Counts, Policy 702.0 Inmate Transportation, 9/21/2019 Use of Force Report, and Post Order 551-K Inmate Transport. [ECF No. 34-1 at 2, ECF No. 40 at 9]. HCSO Defendants argue they have "produced 10 Detention Center policies without confidential designations, and have only designated those policies and procedures that specifically address security plans for the Detention Center." [ECF No. 40 at 10 (emphasis removed)].

Although Plaintiff argues that state agencies "provide the public with direct access to all unrestricted policies and procedures by and through their website," she does not argue that these policies and procedures designated confidential by HCSO Defendants are publicly available. [*See* ECF No. 38 at 9]. Additionally, HCSO Defendants represent "the use of force report . . . details on the force used and because of the nature and structure of the report, it reveals information contained within the Detention Center's Use of

---

[8] HCSO Defendants inform the court that "Plaintiff recently requested over 30 additional (and many inapplicable) Detention Center policies, and certain of the requested policies would fall under the Confidentiality Order for the same reason that the three policies contained in the Disputed Documents were designated confidential." [*See* ECF No. 40 at 5 (emphasis removed)].

10

Force policy including how, and by what methods, officers use to response to different use of force scenarios." [ECF No. 40 at 10]. The undersigned finds that HCSO Defendants have carried their burden as to this category of disputed documents.

Turning to the final category of disputed documents, HCSO Defendants argue:

> [T]he Detention Center's conclusions contained in the two internal Office of Professional Standards ("OPS") reports (HCSO 321-322, and 689) are also entitled to confidential protection. Notably, HCSO has disclosed the actual OPS reports and has only designated the conclusions of the reports. These conclusions not only touch on the policies and procedures discussed above, but also contain the confidential conclusions of the OPS investigators.

[ECF No. 34 at 8]. Plaintiff has not put forth a "specific basis" for challenging this category of disputed documents, beyond arguing as to the importance of these documents to her case and that HCSO Defendants have failed to meet their burden and are "simply designating these documents as confidential in an attempt to hinder the Plaintiff's ability to openly prove her case . . . ." [*See* ECF No. 38 at 7–9; *see also* ECF No. 34-3].[9]

South Carolina has not expressly ruled on whether the contents of internal affairs reports—such as the OPS reports produced in this case—are

---

[9] As stated above, although paragraph 8 of the confidentiality order places the burden for proving the necessity of a confidential designation on the party asserting confidentiality, the party challenging the certification must provide the specific bases for the challenge. [ECF No. 23 ¶ 8].

11

covered by FOIA. Instead, the South Carolina Supreme Court has held that it did not agree that "the internal investigation reports of law enforcement agencies are *per se* exempt" from disclosure under FOIA. *City of Columbia v. Am. C.L. Union of S.C., Inc.*, S.E.2d 747, 749 (S.C. 1996). The South Carolina Supreme Court also held that a "determination of whether documents or portions thereof are exempt from the FOIA must be made on a case-by-case basis." *Id.* Additionally, decisions from courts both within and outside the Fourth Circuit have held that internal affairs reports can be protected by confidentiality orders. *See, e.g., Fether v. Frederick Cty., Md.*, C/A No. CCB-12-1674, 2014 WL 1123386, at *2 (D. Md. Mar. 19, 2014) ("The internal affairs investigative reports at issue . . . should be deemed as confidential for purposes of the Court's confidentiality order."); *Sharpe v. Cty. of Nassau*, C/A No. 15-6446 (ADS) (AYS), 2016 WL 7350690, at *5 (E.D.N.Y. Dec. 19, 2016) ("The Court notes that although there may not be a presumption that all Internal Affair Reports are confidential, courts in this jurisdiction have held that in certain circumstances, such reports may be deemed confidential . . . . Defendants have asserted that relevant documents in their possession contain sensitive information relating to Plaintiff and individual officers. As such, the Court finds that Defendants have made at least a threshold showing that a confidentiality order is warranted."); *c.f. Klein v. Madison*, C/A No. 17-4507, 2018 WL 3535301, at *4 (E.D. Pa. July 20, 2018) ("Internal

Affairs documents shall be treated as confidential and shall be used only for the purposes of this litigation.").

Here, the undersigned agrees that HCSO Defendants have carried their burden to as to this category of disputed documents "because the limited designations go to sensitive and otherwise confidential internal proceedings and conclusions regarding personnel and security matters." [ECF No. 40 at 12].

For the foregoing reasons, the undersigned grants HCSO Defendants' motion to confirm confidential designations.

IT IS SO ORDERED.

November 23, 2021
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge