# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# AIKEN DIVISION

| | |
|---|---|
| LISA FLAHERTY-ORTEGA, *as personal representative of the estate of* ABED MICHAEL NAQSHABANDI,<br><br>  Plaintiff,<br><br>  vs.<br><br>HORRY COUNTY, SOUTH CAROLINA; HORRY COUNTY SHERRIF'S OFFICE; SCOTT LEGG, CORY JOHSNON, PHILLIP THOMPSON, *in their individual capacities*; CONWAY EMERGENCY GROUP, LLP; and JEFFREY MISKO,<br><br>  Defendants. | No. 1:21-cv-02866-DCN-SVH<br><br>**ORDER** |

      This matter is before the court on Magistrate Judge Shiva V. Hodges's report and recommendation ("R&R"), ECF No. 41, that the court grant defendant Horry County, South Carolina's ("Horry County") motion to dismiss, ECF No. 27.  For the reasons set forth below, the court adopts the R&R and grants the motion to dismiss.

## I. BACKGROUND

      Beginning on August 28, 2019, Abed Michael Naqshabandi ("Naqshabandi") was held as a pretrial detainee at the J. Reuben Long Detention Center (the "detention center") after being charged with several nonviolent misdemeanor offenses.  According to the complaint, Naqshabandi suffered from mental illness, and during his detention, Naqshabandi began to express suicidal ideations.  ECF No. 13, Amend Compl. ¶ 13.  On the morning of September 21, 2019, Naqshabandi attempted to commit suicide multiple times.  After his third suicide attempt, he was tased, restrained, and then transported to

1

Conway Medical Center for evaluation and treatment. There, Naqshabandi was diagnosed with "suicidal ideations," and it was determined that he would be placed on suicide watch once he was back at the detention center. Id. ¶ 17.

Later in the same morning, Naqshabandi was released from the medical center and placed in a transport van owned and maintained by Horry County. The van contained two metal pods—one in the rear of the van and one in the center of the van—that each contained individual seatbelts and were monitored by cameras that provided a live feed to the van's front-seat passengers. Two Horry County employees—defendants Scott Legg ("Legg") and Cory Johnson (Johnson")—placed Naqshabandi in the center transport pod of the van directly behind the driver and front passenger seats. However, the employees did not secure Naqshabandi with a seatbelt, allegedly in violation of the applicable safety and transport policies and procedures.

During the twenty-minute drive back to the detention center, Naqshabandi removed himself from his seat and positioned himself onto the floor of the van. Naqshabandi then crawled to the floorboard of the transport vehicle, wrapped a seatbelt around his neck, and strangled himself in view of the video monitoring devices that both recorded and provided a live-feed to the front-seat Horry County employees. Once the van arrived at the detention center, Legg and Johnson checked on Naqshabandi and found him unconscious with the seatbelt around his neck. Emergency personnel were able to restart Naqshabandi's heart, but he never regained consciousness. Naqshabandi died on September 23, 2019 from asphyxia due to ligature compression of the neck, vasculature, and trachea.

On April 14, 2020, plaintiff Lisa Flaherty-Ortega ("Flaherty-Ortega"), as personal representative of the estate of Naqshabandi, filed a complaint in the Horry County Court of Common Pleas against defendants Horry County; Horry County Sheriff's Office; Legg, Johnson, and Phillip Thompson ("Thompson") in their individual capacities; Conway Emergency Group, LLP ("Conway"); and Jeffrey Misko ("Misko") (together, "defendants"). ECF No. 1-1. On September 3, 2021, defendants removed the action to this court. ECF No. 1. On September 17, 2021, Flaherty-Ortega filed an amended complaint. Amend. Compl. The amended complaint, now the operative complaint, asserts seven causes of action.[1] Id. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rules 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to Magistrate Judge Hodges.

On October 14, 2021, Horry County filed a motion to dismiss Flaherty-Ortega's third cause of action, which was a Monell claim asserted against Horry County. ECF No. 27. Flaherty-Ortega responded in opposition on November 2, 2021, ECF No. 35, and Horry County replied on November 11, 2021, ECF No. 38. On November 19, 2021, Magistrate Judge Hodges issued the R&R, recommending that the court grant the motion to dismiss. ECF No. 41. On December 2, 2021, Flaherty-Ortega filed her objections to the R&R. ECF No. 43. Horry County did not file objections but responded to Flaherty-

---

[1] The causes of action are: (1) negligence and gross/survival against Horry County and the Horry County Sheriff's Office, (2) negligence and gross negligence/wrongful death against Horry County and the Horry County Sheriff's Office, (3) violation of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 against Horry County, (4) violation of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 against Legg and Johnson, (5) violation of his Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 against Thompson, (6) a survival claim for medical negligence/gross negligence against Conway and Misko, and (7) a wrongful death claim for medical negligence/gross negligence against Conway and Misko. Amend. Compl.

Ortega's objections on December 16, 2021. ECF No. 45. Flaherty-Ortega did not file a reply, and the time to do so has now elapsed. As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of the Magistrate Judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of the Magistrate Judge. See Thomas v. Arn, 474 U.S. 140, 149-50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270-71 (1976). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in the Magistrate Judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a specific objection, the court reviews the R&R only for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 558 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

8(a)(2). A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. Ostrzenski v. Seigel, 177 F.3d 245, 251 (4th Cir. 1999); Mylan Labs., Inc., 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III.   DISCUSSION

Horry County moves to dismiss Flaherty-Ortega's third cause of action, which alleges that Horry County is liable under 42 U.S.C. § 1983 for violating Naqshabandi's Fourth and Fourteenth Amendment rights. The Magistrate Judge recommended that the court dismiss Flaherty-Ortega's § 1983 claim against Horry County, reasoning that Flaherty-Ortega had failed to plead sufficient facts showing that she is entitled to bring a claim against Horry County.

Municipalities and other local government units may be held liable under § 1983. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 (1978). But "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Id. at

691 (emphasis in original); see <u>Connick v. Thompson</u>, 563 U.S. 51, 60 (2011) (holding that local governments "are not vicariously liable under § 1983 for their employees' actions"). Thus, a plaintiff who seeks to assert a § 1983 claim against a municipality or county is obliged to "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 403 (1997) (citing <u>Monell</u>, 436 U.S. at 694).

Flaherty-Ortega does not allege that Horry County had an express policy in place that violated Naqshabandi's constitutional rights. As the Fourth Circuit has explained, "[a]lthough that may be the most common basis for liability under <u>Monell</u>, it is not the only one." <u>Starbuck v. Williamsburg James City Cnty. Sch. Bd.</u>, 28 F.4th 529, 533 (4th Cir. 2022). Rather,

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

<u>Id.</u> (quoting <u>Lytle v. Doyle</u>, 326 F.3d 463, 471 (4th Cir. 2003)) (alteration in original and other citations omitted).

The R&R construed the complaint as alleging that Horry County should be held liable for the third and fourth types of <u>Monell</u> customs or policies—those arising from (3) an omission, such as a failure to properly train officers, and from (4) a persistent and widespread practice. Flaherty-Ortega does not object to that finding, and the court assesses the complaint in the same manner. The R&R determined that Flaherty-Ortega had failed to adequately allege an actionable policy or custom under either basis.

Flaherty-Ortega objects to the R&R on both grounds. First, she argues that her allegations about two other supposedly similar incidents that occurred during a twelve-month span are sufficient to establish a "persistent and widespread" practice. Second, she argues that the allegations of training omissions and deficiencies in the complaint are sufficient to allow her Monell claim to proceed. The court discusses each objection in turn, ultimately adopting the R&R's recommendation and finding that Flaherty-Ortega's allegations against Horry County are not sufficient to establish Monell liability.

### A. "Persistent & Widespread" Practice

Flaherty-Ortega's first objection relates to the fourth theory of Monell liability, also known as the "condonation" theory. Under this theory, a municipality "violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'" Owens v. Balt. City State's Att'y's Off., 767 F.3d 379, 403 (4th Cir. 2014) (quoting Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987)). Generally, to prevail under a condonation claim, "[a] plaintiff must point to a 'persistent and widespread practice of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" Id. (quoting Spell, 824 F.2d at 1386–91). "Both knowledge and indifference can be inferred from the 'extent' of employee's misconduct." Id. (quoting Spell, 824 F.2d at 1391). However, "[s]poradic or isolated violations of rights will not give rise to Monell liability; only 'widespread or flagrant' violations will." Id. Still, "[a]lthough prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Id.

In the amended complaint, Flaherty-Ortega alleges that Horry County violated Naqshabandi's Fourth and Fourteenth Amendment rights. Amend. Compl. ¶ 36. Specifically, the amended complaint alleges that Horry County "maintained a custom and practice of consciously and dangerously disregarding the health and safety of individuals being transported by the Horry County Sheriff's Office within departmental transport vans." Id. ¶ 39. The amended complaint further alleges that Horry County's custom and practice "manifests deliberate indifference to the health and safety of all inmates and mental health patients in their custody," including the health and safety of Naqshabandi. Id. For the reasons discussed below, the court treats these as two distinct allegations.

First, Flaherty-Ortega alleges that Horry County maintained a custom or practice that involved "routine disregard for the proper use of safety belts, routine disregard for the proper supervision of passengers, and routine disregard for traffic laws." Id. Flaherty-Ortega alleges that besides Naqshabandi, two other involuntarily-committed individuals died in transport vans owned by the Horry County Sheriff's Office within one year of Naqshabandi's death, due to Horry County's deliberate indifference to the health and safety of those detainees. Id. The Magistrate Judge determined that Flaherty-Ortega's allegations regarding Horry County's practice of disregarding traffic safety were deficient because she did not allege a sufficient number of past incidents similar to the one in this case to allege a "persistent and widespread" practice. In her objections to the R&R, Flaherty-Ortega argues that three transport van deaths in less than twelve months caused by a similar disregard for existing safety and passenger supervision policies are sufficient to be characterized as a pattern or practice, particularly at the motion to dismiss stage. ECF No. 43 at 4.

The court agrees with Flaherty-Ortega that three total similar incidents may indeed be enough to demonstrate knowledge or indifference at the motion to dismiss stage. In the R&R, the Magistrate Judge cited a Western District of Virginia case for that proposition that a plaintiff must allege "a similar number of incidents over a similar timeframe." See ECF No. 41 at 8 (quoting Booker v. City of Lynchburg, 2021 WL 519905, at *4 (W.D. Va. Feb. 11, 2021)). However, the court does not read Booker as purporting to establish a minimum number of similar incidents required to prove that a practice is persistent or widespread. The court likewise does not read the R&R as recommending dismissal of Flaherty-Ortega's claims solely because she fails to allege any minimum number of incidents. Indeed, what constitutes a sufficient number of incidents or a relevant timeframe varies from one case to the next. Compare Kline v. Wicomico Cnty., 2022 WL 1538625 (D. Md. May 16, 2022) (finding allegations that correctional officers failed to perform welfare checks on the decedent and other detainees and fraudulently recorded their welfare checks over the course of two hours on a single day were not sufficient to state a condonation claim), Woodson v. City of Richmond, 88 F. Supp. 3d 551, 569 (E.D. Va. 2015) (finding that allegations of two separate instances in which the sheriff failed to investigate inmate deaths involving heat related illnesses could not be considered persistent and widespread), and Ross v. Prince George's Cnty., 2012 WL 1204087 (D. Md. Apr. 10, 2012) (finding that the plaintiff failed to provide any factual allegations beyond those surrounding his own injury and arrest when alleging that the police had a widespread practice of using excessive force) with Rico v. Green, 2021 WL 1215775 (D. Md. Mar. 30, 2021) (finding that the plaintiff alleged sufficient factual detail to support a Monell claim because the plaintiff "relied on two attacks by the same

9

correctional officer against the same inmate himself"), McDowell v. Grimes, 2018 WL 3756727 (D. Md. Aug. 7, 2018) (finding that the plaintiff's assertions of "regular occurrences" of excessive force sufficiently established a persistent and widespread practice of constitutional violations), and Jones v. Chapman, 2015 WL 4509871 (D. Md. Jul. 24, 2015) (denying a motion to dismiss when the plaintiff alleged use of excessive force by the defendant on multiple occasions "in recent years"). As such, the court will not dismiss Flaherty-Ortega's claims based solely on the number of the past instances alleged.

 Nevertheless, the court agrees with the R&R that the two deaths at issue in the other cases are too dissimilar from the allegations in this case to reflect an actionable widespread and persistent policy. The Magistrate Judge took judicial notice of the court filings in two cases arising out of the two other fatalities identified in Flaherty-Ortega's complaint. Based on the state court filings, the Magistrate Judge agreed with Horry County's assertion that the two fatalities "resulted from the transport of [the] individuals through floodwaters." ECF No. 41 at 9 (citing ECF No. 27 at 5). Flaherty-Ortega does not object to the Magistrate Judge's decision to take judicial notice of those records, and the court finds no clear error with the same. See also Seabrook v. City of N. Charleston, 2020 WL 7417411, at *3 n.3 (D.S.C. Dec. 17, 2020) ("In reviewing a Rule 12(b)(6) dismissal, a court may properly take judicial notice of matters of public record."). Public records[2] show that the other incidents apparently resulted from driving around road

---

[2] Although this court is unable to locate the state court documents, it applies to same principle and takes judicial notice of a civil case filed in federal court by the mother of the alleged victim in the other case. See Green v. Horry County, 4:19-cv-03467-MGL (D.S.C. 2019). The records in that case paint a similar picture. See, e.g., id., ECF No. 1 ¶ 3 ("Mrs. French died by drowning after Defendants . . . locked Mrs. French in an unsafe

closures or barricades and through high floodwaters. Flaherty-Ortega concedes this point in her objections. See ECF No. 43 at 3–4.

In this action, Flaherty-Ortega alleges that county officers endangered Naqshabandi by failing to secure his seatbelt and properly supervise him while in transport. As discussed above, the two other fatalities alleged in the complaint did not involve seatbelts or supervision, but rather involved officers unlawfully driving around barricades and into floodwaters. As such, although Flaherty-Ortega alleges a custom or practice that involved "routine disregard for the proper use of safety belts, routine disregard for the proper supervision of passengers, and routine disregard for traffic laws," Amend. Compl. ¶ 39, the other two deaths alleged in the complaint involve only the last "practice," at best.[3] Accordingly, Flaherty-Ortega has only alleged this one isolated instance of failure to secure seatbelts and supervise passengers, and that allegation is insufficient to support her claim that a widespread and pervasive practice existed.

Despite the glaring differences between this case and two other alleged deaths, Flaherty-Ortega attempts to characterize all three as similar by hyper-generalizing them as instances of an officer's disregard for traffic safety during van transport. The court rejects this characterization, which disregards the specific facts underlying each incident and treats every traffic violation—no matter how minor or egregious—as equal.

---

caged compartment of a transport vehicle and drove the vehicle around a barricade and into rising flood waters.").

[3] Specifically, based on the records reviewed by the court, the other incident involved two involuntarily-committed women who were "restrained," and the women allegedly died because they were unable to escape the restraints. See Green v. Horry County, 4:19-cv-03467-MGL (D.S.C. 2019), ECF No. 1 ¶¶ 37, 53. This case, on the other hand, involves a detainee who allegedly died because he was not properly secured and was allowed to escape the restraints.

11

Moreover, even if the court found that Flaherty-Ortega sufficiently alleged a custom or policy involving a broad disregard of traffic safety laws or transportation policies, the court finds that, critically, such a custom or policy would not rise to the level of a constitutional violation. Courts routinely find that suits brought for a municipality's disregard of traffic safety do not assert constitutional violations. See, e.g., Jabbar v. Fischer, 683 F.3d 54, 58 (2d Cir. 2012) ("[T]he failure of prison officials to provide inmates with seatbelts does not, without more, violate the Eighth or Fourteenth Amendments."); Taylor v. Stateville Dep't of Corr., 2010 WL 5014185, at *1 (N.D. Ill. Dec. 1, 2010) (finding that a failure to provide seatbelts or to secure available seatbelts does not, by itself, constitute a substantial risk of serious harm rising to the level of an Eighth Amendment violation); Jackson v. City of Joliet, 715 F.2d 1200, 1205–06 (7th Cir. 1983) (explaining that § 1983 "is not a mandate of highway safety" and that if traffic safety torts were so actionable, "many traffic accidents, especially single-car accidents, would become the subject of federal litigation"). And it is axiomatic that a Monell claim cannot lie "where there is no underlying constitutional violation by the employee." Johnson v. Balt. Police Dep't., 500 F. Supp. 3d 454, 459–60 (D. Md. 2020); see also City of L.A. v. Heller, 475 U.S. 796, 799 (1996) ("[N]either Monell . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when the jury has concluded that the officer inflicted no constitutional harm."); Anderson v. Caldwell Cnty. Sheriff's Off., 524 F. App'x 854, 862 (4th Cir. 2013) ("No actionable claim against supervisors or local governments can exist without a constitutional violation committed by an employee."). Therefore, to the extent

Flaherty-Ortega alleges a custom or policy of broadly disregarding traffic safety laws or policies, those claims cannot be brought against Horry County under § 1983.

Affording Flaherty-Ortega the benefit of every doubt, the court liberally construes the amended complaint as properly alleging a Fourteenth Amendment claim that Horry County exhibited deliberate indifference to a detainee who posed a substantial risk of serious harm to himself. Since Naqshabandi "was a 'pretrial detainee and not a convicted prisoner,' the Fourteenth Amendment, and not the Eighth Amendment, governs his claim." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)); see also Ingraham v. Wright, 430 U.S. 651, 671 n.40 (1977) ("Eighth Amendment scrutiny is appropriate only after the state has complied with the constitutional guarantees traditionally associated with criminal prosecutions."). However, "[t]he 'precise scope' of this Fourteenth Amendment right remains 'unclear.'" Mays, 992 F.3d at 300 (citing Martin, 849 F.2d at 871). As such, courts "have traditionally looked to Eighth Amendment precedents in considering a Fourteenth Amendment claim of deliberate indifference to serious medical needs." Id. After all, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth amendment protections available to the convicted prisoner." Martin, 849 F.2d at 871. Courts, in turn, have interpreted the Eighth Amendment as requiring prison officials to "take reasonable measures to protect a prisoner from self-destruction when the jailer knows that the prisoner has suicidal tendencies." Gordon v. Kidd, 971 F.2d 1087, 1097 (4th Cir. 1992). Thus, viewed in the light most favorable to Flaherty-Ortega, the amended complaint sufficiently alleges "deliberate indifference" to the safety of Horry County's detainees who demonstrate such tendencies. Amend. Compl. ¶ 39.

Unfortunately for Flaherty-Ortega, the amended complaint solely alleges one such constitutional violation related to mental-health patient safety—Naqshabandi's own—even with all reasonable inferences drawn in the plaintiff's favor. Importantly, although the two other deaths cited by Flaherty-Ortega involved mental-health patients, the public records contain no suggestion that the two individuals were suicidal or otherwise exhibited a risk of harm. Even in the light most favorable to Flaherty-Ortega, those deaths are only attributable to traffic safety violations. Thus, the court finds that the two other deaths resulting from a disregard of traffic laws or county transportation policies do not support Flaherty-Ortega's allegation that Horry County had a custom or policy of deliberate indifference to a detainee who posed a substantial risk of self-harm.[4] Accordingly, the court adopts the R&R and finds that the three deaths alleged do not satisfactorily show a persistent or widespread practice.

### B. Failure to Train

Alternatively, Flaherty-Ortega also alleges that Horry County engaged in an unconstitutional omission of a policy via its deficient training of officers. The R&R concluded that Flaherty-Ortega's allegations regarding defendants' training or lack thereof were insufficient to state a plausible Monell claim.

---

[4] To be sure, Flaherty-Ortega argues that the state court cases resulted in "payment for constitutional claims arising under Monell." Id. at 4. However, the court has not identified any public records reflecting the fact that constitutional claims were involved, and while the court must draw all reasonable inferences in favor of the plaintiff, it need not accept "unwarranted inferences." See Nemet Cheverolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009) (citing Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). Therefore, the court is unable to conclude that two other incidents resulted from the county's deliberate indifference toward detainees who posed a danger to themselves or others.

At the outset, the court notes that claims against a municipality for failure to train are generally difficult to bring.  "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983."  City of Canton v. Harris, 489 U.S. 378, 389 (1989).  "Deliberate indifference is stringent standard of fault, requiring proof that a municipal action disregarded a known or obvious consequence of his action.  Brown, 520 U.S. at 410.  Not only must the plaintiff "identify conduct properly attributable to the municipality," but the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.  Id. at 404 (emphasis in original).  The standard of fault is so stringent because any less stringent standard of fault for failure-to-train claim "would result in de facto respondeat superior liability on municipalities."  Harris, 489 U.S. at 392.  For failure to train to rise to the level of deliberate indifference, a plaintiff must show either (1) a pattern of unconstitutional conduct by inadequately trained employees, or (2) a single violation of a federal right that is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations."  Hill v. Robeson Cnty., 733 F. Supp. 2d 676, 687 (E.D.N.C. 2010) (quoting Brown, 520 U.S. at 407-09).  To show deliberate indifference by the second method, a plaintiff must show at least "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation."  Brown, 520 U.S. at 409.  Moreover, the single violation must reflect the municipality's "deliberate indifference to the 'highly predictable consequence.'"

15

Connick, 563 U.S. at 64 (quoting Brown, 520 U.S. at 398).  But these requirements are softened when deciding whether the plaintiff has set forth a plausible failure-to-train claim in the complaint.  To plead deliberate indifference at the motion to dismiss stage, the "plaintiff need only allege that the municipality was aware of the alleged pattern of practice, and that the municipality's failure to discipline its officers allowed a custom, policy, or practice of [constitutional] violations to develop."  Corbitt v. Balt. City Police Dep't, 2022 WL 846209, at 9 (D. Md. Mar. 22, 2022) (internal quotation marks and citation omitted).

      The Magistrate Judge recommended granting Horry County's motion to dismiss after finding that Flaherty-Ortega had not alleged any facts setting forth the nature of the training that Horry County provides, that Horry County made any deliberate or conscious choice with regards to the training, that Legg and Johnson's actions were caused by a failure to train, or that what occurred was anything more than a single incident of misconduct.  ECF No. 41 at 12.  In her objections, Flaherty-Ortega refers the court back to an allegation in the complaint that "Horry County failed to offer or require any training or instruction regarding proper regard for the health and safety of mentally ill individuals being transported by the Horry County Sheriff's Office within county transport vans." Amend. Compl. ¶ 40.  Even with due consideration of that allegation, however, the court finds that Flaherty-Ortega has not sufficiently alleged that Horry County's failure to train its employees was the moving force behind the alleged constitutional violation.  As the court previously explained, Flaherty-Ortega has not shown Horry County engages in a pattern of unconstitutional conduct with regard to the safety of suicidal inmates, so it could not have demonstrated a pattern of unconstitutional conduct resulting from a failure

to train for the same. Therefore, Flaherty-Ortega must allege that based on a single violation of a federal right—Naqshabandi's own—Horry County failed to train its employees to "handle recurring situations presenting an obvious potential for [] a violation" and exhibited deliberate indifference to a "highly predictable consequence." Brown, 520 U.S. at 398, 409. "The Fourth Circuit has not analyzed what constitutes a recurring situation under Brown and Harris . . . ." Hill, 733 F. Supp. 2d at 687. In general, though, a failure to train rises to that level where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of [the county] can reasonably be said to have been deliberately indifferent to the need." Harris, 489 U.S. at 390. Here, Flaherty-Ortega has not specifically alleged that there was an obvious need to train officials on the transport of an inmate who was expressing suicidal ideations. Nor has Flaherty-Ortega alleged that the municipality failed to equip law enforcement with training to recognize or protect against the situation. Thus, although the claim is in its relatively early stages, Flaherty-Ortega fatally fails to allege sufficient facts showing that Horry County, in violation of the Constitution, was presented with a recurring situation with an obvious potential for future violations and deliberately failed to train its employees to account for those scenarios. See Stevens v. Cabarrus Cnty. Bd. of Educ., 514 F. Supp. 3d 797, 810 (M.D.N.C. 2021) (finding that a complaint failed to allege a failure to train where it contained no facts suggesting that the defendant "acted deliberately in failing to impose

additional training requirements"). Therefore, the court adopts the R&R and grants the motion to dismiss.[5]

## IV.   CONCLUSION

For the foregoing reasons, the court **ADOPTS** the R&R and **GRANTS** the motion to dismiss.

**AND IT IS SO ORDERED.**

                                                                          DAVID C. NORTON
                                                                          UNITED STATES DISTRICT JUDGE

**September 1, 2022**
**Charleston, South Carolina**

---

[5] Due to the progression of litigation in between the time that the R&R was filed and the time that the court ruled on the motion, Flaherty-Ortega notes that three depositions have been conducted. Flaherty-Ortega includes excerpts from those depositions to support her position that no training was provided. As a threshold matter, the deposition excerpts are outside the four corners of the complaint and may not be considered by the court without converting the proceedings to one for summary judgment. Fed. R. Civ. P. 12(d). Even if the court were to consider them, they fail to move the needle. The excerpts indicate that Horry County officials did not receive any additional training after the prior fatalities involving flood waters following Hurricane Florence. ECF No. 43-2, Johnson Dep. at 13:12–14. As discussed above, however, the mere fact that Horry County failed to follow transportation policies is not, by itself, a constitutional violation. Therefore, the failure to provide training on the same cannot give rise to Monell liability.